IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN PEREZ, | : | CIVIL ACTION NO.: 3:20-cv-01103 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| OFFICER COLOMBO, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.    Introduction.

The plaintiff, Steven Perez ("Perez"), filed an amended complaint, claiming that the defendant, Officer Colombo ("Colombo"), a Wayne County Police Officer, used excessive force during an arrest in 2019.  The case is presently before the court on a motion for summary judgment filed by Colombo.  Upon review of the motion and briefs filed in support and opposition, we will grant Colombo's motion for summary judgment.

### II.    Background and Procedural History.

Perez began this pro se action by filing a complaint, on June 30, 2020, naming the Wayne County District Attorney, Patrick Robinson, and Colombo as defendants. *Doc. 1.*  On June 2, 2021, the parties consented to proceed before a

magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 23*. On July 13, 2021, we granted Perez leave to file an amended complaint, which he did on July 26, 2021. *Doc. 34*. In his amended complaint, Perez only names Colombo as a defendant. *Id*.

Perez claims that, on April 13, 2019, the police responded to a call at 613 Main Street, Honesdale, Pennsylvania. *Id*. at 2. Perez alleges that he was the victim of a stabbing and that the police discovered him bleeding and lying on the floor in pain. *Id*. According to Perez, Colombo kicked "plaintiff on his right foot with such force that it caused plaintiff to scream out because of the excruciating pain." *Id*. Perez then claims that he was carried to the police squad car and was taken to the hospital at Wayne Memorial in Honesdale. *Id*. While at the hospital, Perez claims that an x-ray was taken of his foot, and that his foot was wrapped with an "act bandage." *Id*. Additionally, Perez alleges that he received mental services for this incident. *Id*. Per Perez, Colombo utilized excessive force against him in violation of his civil rights. *Id*. For relief, Perez requests $100.00 in compensatory damages and $2.5 million in punitive damages. *Id*.

On September 29, 2021, we issued an Order dismissing Patrick Robinson as a defendant in this action. *Doc. 48*. On November 30, 2021, Colombo filed a motion for summary judgment (*doc. 49*), a statement of material facts (*doc. 49-5*), and a brief in support of that motion (*doc. 50*). We then issued an Order (*doc.

*52*), directing Perez to file a brief in opposition to Colombo's motion for summary judgment.  On December 20, 2021, Perez filed his brief in opposition (*doc. 53*); however, he failed to file a counterstatement of material facts.  On January 3, 2022, Colombo filed a reply brief to Perez's brief in opposition. *Doc. 54*.

We note from the outset that Perez failed to comply with Local Rule 56.1 despite our Orders informing him of the relevant standards. *See Doc. 2*, *52*. Although Perez did file a brief in opposition, he failed to file a counterstatement of material facts.  Even if we were to liberally construe Perez's brief in opposition as a counterstatement of material facts, he fails to dispute any of Colombo's material facts. *See doc. 53*.  Accordingly, Colombo's statement of material facts will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1. *See Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (Deeming the defendants' statement of material facts as admitted because the pro se plaintiff failed to file a counterstatement of material fact); *see also Thomasson v. Kohen*, No. 3:11-cv-2392, 2013 WL 1248636, at *2 (M.D. Pa. Mar. 21, 2013) (same).

## III.    Summary Judgment Standard.

Colombo moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F.Supp.2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing

4

that the materials cited do not establish the absence . . . of a genuine dispute." Fed.

R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which

that party will bear the burden at trial," summary judgment is appropriate. *Celotex*,

477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides

merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence

supporting the nonmoving party and more than some metaphysical doubt as to the

material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586

(1986).

The substantive law identifies which facts are material, and "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A

dispute about a material fact is genuine only if there is a sufficient evidentiary

basis that would allow a reasonable fact finder to return a verdict for the non-

moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made

6

in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd.*
*v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.   Material Facts.

Perez filed a suit against Colombo, alleging that Colombo violated his
civil rights during an April 13, 2019, arrest, claiming that Colombo used
excessive force when he kicked Perez's foot. *Doc. 49-5* at ¶ 1; *doc. 34* at 2.[1]
Perez later pleaded guilty to resisting arrest in violation of 18 Pa.C.S. § 5104[2].
*Doc. 49-5* at ¶ 2.  During Perez's deposition, he conveyed that he had no memory
of the circumstances surrounding his arrest. *Id.* at ¶ 3.  After his arrest, Perez was
taken to Wayne County Hospital, where he told the EMS crew to "suck his
dick," and referred to an EMS provider as a "whore" and "slut," and said to her
that he "will fuck you up bitch." *Id.* at ¶ 4.  Perez was then examined and was
determined to have no injury to his ankle. *Id.* at ¶ 5.  Specifically, the Wayne
County Hospital medical evaluation indicated the following findings:

---

[1] Colombo does not deny that he kicked Perez's foot. *See doc. 54* at 6.

[2] 18 Pa.C.S. § 5104 holds that "[a] person commits a misdemeanor of the
second degree if, with the intent of preventing a public servant from effecting a
lawful arrest or discharging any other duty, the person creates a substantial risk of
bodily injury to the public servant or anyone else, or employs means justifying or
requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104.

FINDINGS:

There is no reference as to trauma.  The bony structures of the
left foot are intact.  The joint relationships are normal.  There is
no evidence of degenerative or inflammatory joint diseases.
The plantar soft tissues and soft tissues surrounding the left heel
are normal, homogeneous.  The alignment is anatomic.  No soft
tissue abnormality is seen.

IMPRESSION: Normal evaluation of the left foot.

*Id*. (citing *49-3* at 3).

Additionally, Perez's X-rays were normal, with a finding of "no displaced

fracture.  The alignment is anatomic.  No soft tissue abnormality is seen.  No

acute osseous abnormality." *Id*. (citing *49-3* at 4).


**V.     Discussion.**

Perez's claim is brought under 42 U.S.C. § 1983, which "imposes civil

liability upon any person who, acting under the color of state law, deprives

another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States." *Shuman ex rel. Shertzer v. Penn*

*Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225

F.3d 290, 298 (3d Cir. 2000)).  Specifically, Perez alleges that Colombo violated

his Fourth Amendment rights by using excessive force during the April 13, 2019,

arrest.  The Fourth Amendment protects a citizen against unreasonable use of

force in connection with an arrest, investigatory stop, or other seizure. *Graham v.*

8

*Connor*, 490 U.S. 386 (1989).  The question under the Fourth Amendment is

whether the officer's use of force was objectively reasonable under the

circumstances. *Id*. at 397.

The reasonableness inquiry is "highly individualized and fact specific,"

*Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015), and it "requires careful

attention to the facts and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  Other relevant

factors may "include 'the possibility that the persons subject to the police action

are themselves violent or dangerous, the duration of the action, whether the action

takes place in the context of effecting an arrest, the possibility that the suspect may

be armed, and the number of persons with whom the police officers must contend

at one time.'" *Rivas v. City of Passaic,* 365 F.3d 181, 198 (3d Cir. 2004) (quoting

*Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997)).  "The 'reasonableness' of a

particular use of force must be judged from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at

396.  Further, "[t]he calculus of reasonableness must embody allowance for the

fact that police officers are often forced to make split-second judgments—in

9

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Reasonableness under the Fourth Amendment is an objective test. "Thus, if a use of force is objectively unreasonable, an officer's good faith is irrelevant; likewise, if a use of force is objectively reasonable, any bad faith motivation on the officer's part is immaterial." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). Whether the use of force was reasonable is frequently a question for the jury. *Rivas*, 365 F.3d at 198; *Abraham v. Raso,* 183 F.3d 279, 290 (3d Cir.1999) ("Since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared."). But summary judgment is appropriate if the "'court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" *Estate of Smith*, 318 F.3d at 516 (quoting *Abraham*, 183 F.3d at 290).

### A. Colombo is entitled to qualified immunity.

Colombo argues that summary judgment should be granted in his favor because he is entitled to qualified immunity. *Id*. at 22. According to Colombo,

Perez has not provided sufficient evidence to establish a violation of a clearly established right. *Id*.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.* "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

The qualified immunity analysis has two prongs. *Id.* at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.* The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson,* 555 U.S. at 236. So, the court may

forego difficult constitutional issues and award qualified immunity to a defendant

if it is apparent that the defendant did not violate rights that were clearly

established at the time the defendant acted. *Id.*

Here, we turn to whether the law was clearly established. This "qualified

immunity analysis looks through the rearview window, not the windshield."

*Williams v. Secretary PA Dept. of Corrections*, 848 F.3d 549, 570 (3d Cir. 2017).

"The inquiry focuses on the state of the relevant law when the violation allegedly

occurred." *Id*.

"To be clearly established, a legal principle must have a sufficiently clear

foundation in then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

In other words, "[t]he rule must be 'settled law,' which means it is dictated by

'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'"

*Id*. at 589–90 (internal citations omitted). "It is not enough that the rule is

suggested by then-existing precedent." *Id*. at 590. Rather, "[t]he precedent must be

clear enough that every reasonable official would interpret it to establish the

particular rule the plaintiff seeks to apply." *Id*. Still, "the facts of the existing

precedent need not perfectly match the circumstances of the dispute in which the

question arises." *Williams*, 848 F.3d at 570. But if the law did not put the officer

on notice that his conduct would be clearly unlawful, qualified immunity is

appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186,

193 (3d Cir. 2009). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

"While the plaintiff must sufficiently plead a violation, the burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019). "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *Id*.

Here, Perez needs to first demonstrate facts alleging or showing a violation of his constitutional right. *Pearson*, 555 U.S. at 232. As alleged, Perez claims that Colombo kicked him in his foot while he was handcuffed. But it is undisputed that this kick to Perez's foot occurred while Perez was refusing to cooperate with both the police and the emergency medical staff at the scene. It is well established that a police officer may use some force when effectuating an arrest. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or

13

investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); *see also Monticciolo v. Robertson*, No. 15-cv-8134, 2017 WL 4536119, at *14 (D.N.J. Oct. 11, 2017) ("The Fourth Amendment does not require officers … to rely on verbal instructions alone to effectuate an arrest; especially where, as here, an individual previously failed to comply with verbal instructions.").

Additionally, it is undisputed that this kick resulted in no cognizable injury.  In his brief in opposition to Colombo's motion for summary judgment, Perez fails to point to any case law where a minor kick to the foot, which resulted in no injury and was administered to get the individual to comply with the police's orders, was considered excessive force.  Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396.  And "[a]lthough lack of serious injury does not mean excessive force could not have been used, the extent or lack of physical injury is relevant to the question whether the force used is excessive." *Rodeheaver v. Nelson*, No. 3:16-cv-209, 2018 WL 6249923, at *2 (W.D. Pa. Sept. 30, 2018) (citing *Grayer v. Twp. of Edison*, 198 Fed. Appx. 203 (3d Cir.1998)), *report and recommendation adopted*, 2018 WL 6299964 (W.D. Pa. Nov. 29, 2018).  Here, Colombo's kick to Perez's foot, which resulted in no injury, does not rise above the use of *de minimis* force. *See Nolin v. Isbell*,

207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force,
without more, will not support a claim for excessive force in violation of the
Fourth Amendment.") (italicized emphasis added).  Accordingly, we find that
Perez fails to demonstrate facts alleging or showing a violation of his
constitutional right.

        Moreover, even if we concluded that Perez adequately pleaded an
excessive force violation, the law did not put Colombo on notice that his conduct
would be clearly unlawful.  Indeed, existing precedent must have placed the
statutory or constitutional question beyond debate.  Perez cites no case law, nor
can we find any in which a similar fact pattern constituted excessive force. *See
Ashcroft*, 563 U.S. at 741 (finding that, in the context of qualified immunity, the
Supreme Court does "not require a case directly on point, but existing precedent
must have placed the statutory or constitutional question beyond debate.").

        Based on the undisputed facts of this case, Colombo's actions were
objectively reasonably under the totality of circumstances.  Accordingly, we find
that Colombo is entitled to qualified immunity from suit, and summary judgment
is properly entered in his favor. *See Mazella v. Marzen*, No. 3:13-cv-1516, 2015
WL 179091, at *5 (M.D. Pa. Jan. 14, 2015) (quoting *Lockhart v. City of Easton*,
2014 WL 6981101, at *1 (3d Cir. Dec. 11, 2014)) ("Qualified immunity requires

the dismissal of claims for excessive force if the defendant's actions were

'objectively reasonable under the totality of the circumstances.'").

### VI.    Conclusion.

Based on the foregoing, we will grant Colombo's motion for summary

judgment, and the case will be closed.  An appropriate order will issue.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge